IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FLOYD CARRERE, ) | |
| ) | Civil No. 4:03-cv-30430 |
| Plaintiff, ) | |
| ) | |
| vs. ) | FINDINGS OF FACT, |
| ) | CONCLUSIONS OF LAW |
| SGT. MICHAEL BRANDT, ) | AND ORDER FOR JUDGMENT |
| ) | |
| Defendant. ) | |

Plaintiff Floyd Carrere brought this action against Sgt. Michael Brandt on August 4, 2003, asserting a claim for relief under 42 U.S.C. § 1983. Carrere alleges Brandt used excessive force against him in violation of his rights under the Eighth Amendment to the United States Constitution when Brandt, a K-9 officer, allowed or caused his dog to attack Carrere at the Newton Correctional Facility (NCF) on February 11, 2003. Carrere seeks damages.

Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). The parties consented pursuant to 28 U.S.C. § 636(c) and this case was referred to the undersigned.

The case came on for evidentiary hearing at the Iowa State Penitentiary (ISP) on March 14, 2005.[1] Plaintiff appeared pro

---

[1] At the time this lawsuit was filed, Carrere had been transferred to the Iowa State Penitentiary at Fort Madison, Iowa. The parties were present with the Court and Mr. Hill at ISP. Testimony from the NCF witnesses was taken through use of the Iowa Communications Network. Because of technical difficulties, the testimony of NCF witnesses was by audio only.

se at ISP. Defendant was represented by Assistant Iowa Attorney General William Hill.

The matter is submitted on the record at hearing. Plaintiff's Ex. 2, a videotape taken after the incident, was submitted as a plaintiff's exhibit after the hearing and received by the Court into evidence.

### FINDINGS OF FACT

Plaintiff Floyd Carrere has been incarcerated by the Iowa Department of Corrections (IDOC) since October 2000. In September 2002 he was transferred from ISP to NCF to participate in a reintegration program. While Carrere was at NCF he was involved in four separate incidents of assault on staff members, one of which was spitting on staff member Jeff Pankmen. As a result of the Pankmen incident, Carrere was housed in Living Unit A (LUA), a disciplinary detention unit, in Cell 44. (Ex. B). State criminal charges with respect to that incident had also been filed against Carrere.

Defendant Sgt. Michael Brandt is a K-9 officer at NCF. At the time of the incident in question he was the handler for "Drew", a Belgian Malinois, who Brandt had handled since November or December 1999. Drew was trained for use in searches, escorts, and cell extractions.

On February 11, 2003, Carrere was scheduled to appear in state court on the spitting charges. Brandt, with Drew's

assistance, was assigned to escort Carrere to the county courthouse for his initial hearing. As a result of the Pankmen incident, Carrere was on two-man and video escort and had to wear a "spitter's mask."[2] The mask is a one piece hood like a stocking cap made of mesh and cotton: mesh from the top of the head down to approximately the eyes level and then cotton from there to the neckline. The parties' versions of what transpired from this point are at odds in several respects.

Carrere testified that several days beforehand Brandt had come to his cell in the evening, called plaintiff a "bitch-ass punk" and said he would get Carrere the first chance he got. Brandt then showed up at his cell door on February 11 with Drew and told Carrere he was going to the Jasper County Courthouse. Carrere told Brandt he was not going anywhere with him because of his threats and Brandt said he had no choice. Carrere testified he called unit counselor Rich Hutton over and told him he was in fear for his life because Brandt had made previous threats and that Hutton just laughed and walked off.

Hutton notarized some papers at Carrere's request. Carrere eventually decided to go with Brandt, then stuck his hands out the food port and allowed Brandt to cuff him and apply a belly

---

[2] Under prison rules a K-9 officer and dog qualify as a two-man escort. The incident in question was not videotaped. The videotape in evidence is of Carrere's condition and wound after he received medical attention.

chain. He complied with Brandt's command to face the back of the cell. Brandt then came in and leaned down to put leg irons on Carrere.

The problem came when Brandt started to put the spitter's mask on Carrere. Brandt was behind Carrere. As the Court understands the testimony, Brandt was just inside the cell door and Drew was at the cell door behind and to the left of Brandt. Carrere testified Brandt rubbed the mask on his head, Carrere shouted at Brandt to stop and the dog started to attack, biting Carrere on the back of one leg. Carrere said Brandt was laughing. Hutton came over, got Drew by his leash and Brandt then took the dog across the hallway.

Brandt testified that the only contact he had with Carrere prior to February 11 was when a Jasper County deputy came on January 24, 2003 to serve papers on plaintiff to force Carrere to give a blood test; Brandt and Drew accompanied the deputy on that occasion to make sure there were no problems. Brandt denied threatening Carrere or calling him names. Brandt said he usually worked the day shift, from 6:30 a.m. to 2:30 p.m.

Brandt's subsequent disciplinary report reflects that on February 11 as he walked up to Carrere's cell with Drew, Carrere greeted him with "there's that pussy-ass sgt." (Ex. D at 1). Brandt knew that Carrere was a "spitter." Brandt told Carrere he was to escort him for his initial court appearance for the previous

assault; Carrere said he was not going. Brandt told him he had to go. Counselor Hutton was behind Brandt. Carrere asked Hutton to notarize a paper for him, which Hutton did. Carrere then started to "strip out" for transport while the cell door was closed, put on the transport jump suit, and was compliant with cuffing. Brandt then directed plaintiff to face the back of the cell and instructed another officer to open the cell door. Brandt started to put on the leg irons and Carrere complained about them.

  Brandt then started to pull the spitter's mask over Carrere's head. This was the first time Carrere had had to use the mask. As Brandt was trying to pull it down, Carrere complained Brandt was messing up his hair. Brandt told him not to worry about it, but Carrere started getting verbally abusive and physically aggressive. Brandt let go of the spitters mask; he had one hand placed on Carrere's right shoulder and another on his left arm. Carrere kept raising his arms up trying to take the mask off. Drew was to Brandt's left and back a bit. Carrere kept trying to turn to the right, causing Brandt to think Carrere was going to try to spit on him. Brandt told him if he kept it up Brandt would have to take him down on the ground. Carrere stopped going toward the right and moved to the left, turning into Brandt with sufficient force to move Brandt back.

  Drew reacted immediately to Carrere's motion. Drew bit Carrere on the back of his left leg at about the lower thigh,

released and then grabbed and held Carrere's pant leg. Brandt testified the dogs are trained to bite and hold without command if their handler is attacked. Brandt did not give a command. When Drew engaged Carrere stopped moving, whereupon Brandt put one hand down and told Drew "nay," the command to stand down. By this point Hutton had come up. Drew had released but it looked to Hutton as if Drew might go after Carrere again. Hutton grabbed Drew's leash and pulled the dog back. Only a few seconds elapsed from the time Drew reacted to the end of the incident.

Brandt proceeded to finish placing restraints on Carrere and took him to the medical department, standard procedure when an inmate is hurt. According to prison medical records, and as shown on the video tape, the injury was minor.[3] No puncture wound was noted, the skin appeared as if it had been scraped. There was a "slight break in the skin," some bruising, but no bleeding. (Ex. A). In his testimony, Carrere claimed that the incident was psychologically traumatizing and left him with a fear of dogs.

An inmate witness, Robert Andrews, was housed in Cell 31 down the hallway diagonally from Carrere's cell. He testified he observed Brandt approaching the cell, cuffing the inmate and then the dog leaped forward and nipped at the inmate. Andrews did not see what caused the dog to lunge, did not recall whether the

---

[3] Prison medical records erroneously refer to Carrere's right leg as having been involved. (Ex. A).

officer gave the dog a command to lunge and did not recall any prior altercations between Carrere and Brandt.

Counselor Hutton also testified. He was present in the range that day ten or fifteen feet down the hallway classifying other inmates. He had notarized papers for Carrere and indicated the notarization had to have been arranged in advance as Hutton had to bring his stamp over from another unit. He did not recall Carrere telling him Brandt had threatened him or that Carrere feared for his life, just that he did not want to go to court with this officer. Hutton remembered hearing Carrere verbally abusing the officer, then heard a commotion and the officer and dog went into Carrere's cell. Hutton went to see if he could assist.

Unit Manager Jeff Pankmen, the spitting victim, was also present on February 11 classifying inmates. He observed the interactions between Carrere and Brandt. Pankmen heard something about Carrere not wanting to go to court but he eventually decided to go. There was discussion between Brandt and Carrere as Carrere was cuffing up and Brandt was applying the leg irons. Pankmen remembered the discussion as Brandt tried to get the spitters mask on Carrere because he thought it was amusing that Carrere was concerned about his hair being messed up. Carrere was getting more agitated and as Pankmen looked over, he saw Brandt do some sort of jerking motion. The dog sat up and went in the cell door. Pankmen saw Hutton come up and grab the dog's leash.

Another inmate on the range, Joseph Sutton, did not witness the incident but claimed he heard Brandt make statements to the effect he would make sure Carrere was sent out of NCF and after the incident, that they "got him." Sutton's cell was on another wing of LUA.

The Court generally credits Brandt's version of what occurred and that of the other officers in a position to see, as well as the testimony of Robert Andrews. The Court finds that Brandt did not make any threats to Carrere prior to the incident nor was the incident part of a sadistic plan on Brandt's part as Carrere seems to have believed. The incident occurred only because in the course of Carrere's resistance to Brandt's attempt to place the spitters mask on him, he moved in a manner which the dog Drew perceived as an attack on his handler. Drew acted as he was trained and was promptly called off.

Brandt wrote a disciplinary report on Carrere following the incident. (Ex. D at 1-2). The matter was referred to the Jasper County Attorney and Carrere was criminally prosecuted for assaulting Brandt. (Id. at 3). Carrere was acquitted. The disciplinary report was then heard at ISP, where Carrere had subsequently been transferred. (Id. at 3-4). Carrere challenged the report on the grounds of timeliness under the disciplinary rules, but his objection was overruled and the administrative law judge, Charles Harper, found Carrere had committed an assault and ordered

a sanction of 90 days of disciplinary detention and loss of 90 days of good time. (Id. at 4). Carrere appealed the decision and his appeal was denied by the Warden.

Carrere filed a grievance concerning the incident with Brandt and Drew. (Ex. C at 6). The grievance and the grievance appeal were denied. This lawsuit followed.

**LAW AND ULTIMATE FACTUAL FINDINGS**

The "cruel and unusual punishments" clause of the Eighth Amendment to the United States Constitution prohibits the "unnecessary and wanton infliction of pain" on prison inmates. Estelle v. Gamble, 429 U.S. 97, 103-06 (1976); accord Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2003); Jones v. Shields, 207 F.3d 491, 494-95 (8th Cir. 2000); Sheldon v. Pezley, 49 F.3d 1312, 1315 (8th Cir. 1995); Stenzel v. Ellis, 916 F.2d 423, 426 (8th Cir. 1990). When a prisoner complains about a use of force, the question is "whether force was applied 'in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Jones, 207 F.3d at 495; see Treats, 308 F.3d at 872; Estate of Davis v. Delo, 115 F.3d 1388, 1393 (8th Cir. 1997)(both quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)); see also Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996); Sheldon, 49 F.3d at 1315; Wilson v. Cooper, 922 F. Supp. 1286, 1290 (N.D. Ill. 1996); Risdal v. Martin, 810 F. Supp. 1049, 1055 (S.D. Iowa 1993). The analysis

involves an assessment of the reasonableness of the officers' actions in the circumstances. <u>Treats</u>, 308 F.3d at 873.

> Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

<u>Id.</u> at 872 (citing <u>Hudson</u>, 503 U.S. at 7).

*De minimis* uses of force are not actionable as an Eighth Amendment deprivation unless "repugnant to the conscience of mankind," <u>Hudson</u>, 503 U.S. at 9-10, but a showing of serious or permanent injury is not required. <u>Jones</u>, 207 F.3d at 495.

To begin with, the complained of injurious force was not used by Brandt at all. Drew reacted to a perceived threat to his handler. As Carrere wrote in his prison grievance: "This dog acted on his own and bit me." (Ex. C at 6). Carrere stopped resisting. Brandt promptly told Drew to release and Drew did so. Hutton held to Drew's leash to make sure. Clearly there is no basis to find that Brandt acted maliciously and sadistically to cause harm. The injury was minor and Carrere was given prompt medical attention. Nothing about Brandt's conduct evinces the kind of "obduracy and wantonness" prohibited by the Eighth Amendment. <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).

In his grievance papers Carrere complained that Brandt "did not have control of his dog and that is why the dog bit me." (Ex. C). That truly is the core of Carrere's complaint. However, an Eighth Amendment claim of cruel and unusual punishment requires significantly more culpable conduct than the failure to exercise due care to protect an inmate. <u>Whitley</u>, 475 U.S. at 319. Even if Brandt did not have adequate control of Drew, a fact not proven, the resulting minor dog bite here falls far short of amounting to an Eighth Amendment violation.

Carrere was not subjected to the unnecessary and wanton infliction of pain in violation of his rights under the Eighth Amendment.

## CONCLUSIONS OF LAW

1.   Plaintiff has not established that Sgt. Brandt used force against him in a manner which violated his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishments, or otherwise that his constitutional rights were violated in connection with the incident of which he complains.

2.   Judgment should be entered in favor of defendant dismissing the complaint.[4]

---

[4] This conclusion makes it unnecessary to address defendant's claim of qualified immunity. The subjective element of Eighth Amendment excessive force claims lends itself to factual disputes which in many cases necessitates trial. Once a trial is held and the facts are resolved against a constitutional deprivation, qualified immunity is moot as a practical matter.

11

**ORDER FOR JUDGMENT**

The Clerk shall enter judgment in favor of defendant and dismiss the complaint.

IT IS SO ORDERED.

Dated this 19th day of August, 2005.

ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE